ROBERTO COLÓN PADILLA, Plaintiff and Appellant, v. SECRE-TARY OF THE TREASURY, Defendant and Appellee.

No. 11640.   Decided June 18, 1962.

*Elmer Toro Luchetti* for appellant. *José Trías Monge, Secretary of Justice,* and *J. C. Santiago Matos, Assistant Secretary of Justice,* for the Secretary of the Treasury.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM.

Roberto Colón Padilla was notified deficiencies in his income-tax return for 1945–46 amounting to $25,803.75 and for 1946–47 amounting to $14,429.56. By stipulation the parties settled the differences which arose as a result of the defenses interposed by the taxpayer as respects the deficiency for 1946–47. As respects 1945–46, the taxpayer alleged as a defense that in that year he sustained a loss of $79,600 which he had not claimed in his return.  He invoked the

cases of *Buscaglia, Treas.* v. *Tax Court*, 68 P.R.R. 719 (1948), and *González Padín Co.* v. *Tax Court*, 66 P.R.R. 909 (1947), in order to establish the propriety of his claim.

The trial court allowed a loss of $11,772.84 only. The taxpayer appealed to this Court to review that determination. He maintains that he is entitled to recognition of the total loss claimed amounting to $79,600. That is the only question raised in this appeal.

Colón Padilla organized in 1933 a corporation known as Roberto Colón Machinery Co., Inc. Of the 800 shares Colón acquired 796 shares with a value of $79,600. The other four were acquired by four different persons.

A meeting of stockholders was held on April 1, 1945, at which Roberto Colón, Ana M. R. de Colón, Dolores Colón, César A. Silva, and Joe A. Jacobs were present. According to the minutes of that meeting, it appears that Colón submitted to those present, for consideration, a statement on the financial condition of the business and suggested the advisability of dissolving the corporation. All those present accepted Colón's proposition. The treasurer presented an inventory of the properties of the corporation containing a detailed statement of materials, stock in hand, and furniture, amounting to $71,543.09. All the documents were examined by the stockholders, who found them correct and it was ordered that they be made a part of the minutes.

It also appears from those minutes that Roberto Colón, under the name of "Roberto Colón Mach. Co.," offered to purchase all the stock in hand and the assets of the corporation as well as to pay all the liabilities amounting to $68,164.62. Instructions were given to draw up the necessary papers to be signed by all the stockholders. In view of the fact that the corporation disposed of all its capital stock by sale to Roberto Colón Machinery Co., it was agreed to dissolve the same.

In view of the resolution adopted at the meeting of April 1, 1945, all the stockholders signed a letter which was sent to the Executive Secretary on the following April 21. The said letter read as follows:

"We acknowledge receipt of your letter of last March 23, and we are glad to advise you that the business of Roberto Colón Machy. Co. was sold on April 1 to Mr. Roberto Colón by unanimous consent of the undersigned, the only stockholders of the corporation, and we therefore consent to declaring the corporation dissolved."

This was the evidence to which the trial court gave credit in order to determine the amount of the loss sustained by the taxpayer in 1945–1946. The trial court fixed the loss at $11,722.84. "The capital stock of the corporation on that date being $80,000, represented by 800 shares at $100 par value, and the corporation having been liquidated for $68,164.62, the capital loss was $11,835.38, or a loss of $14.79 per share. Since the plaintiff was the owner of 796 shares, he sustained a loss of $11,772.84." (Findings of Fact, p. 15.)

The taxpayer insists that the loss amounted to $79,600. He maintains that notwithstanding the disclosures of the minutes referred to hereinabove, the transaction was not actually executed. Roberto Colón did not acquire the assets for $68,164.62 according to the resolution adopted at the meeting of stockholders of April 1. He also offered in evidence a letter from the Executive Secretary advising him that the corporation in question had been dissolved on June 15, 1945 for failure to file the reports required by law. Mr. Colón testified that the transaction had not been consummated. He was asked for the stock book of the corporation and he answered that it had disappeared:

"DEFENDANT:
To witness Mr. Colón:
Mr. Colón, you said that the stock book of Roberto Colón

Machinery and Manufacturing Company, Incorporated, did not exist, that it had disappeared under unfortunate circumstances?

WITNESS:

A.—Yes, I already explained. In my absence, while I was in the United States, my mentally deranged wife gave the children some books and checks to play with, among which was the stock book of the corporation. Upon my return I was able to verify it with pieces which I found in the garbage.

Q.—Did it disappear in that way?

A.—Yes, sir."

It was not possible to introduce in court the best evidence to show that the transaction agreed upon at the meeting of April 1 had not been carried out.

The taxpayer's theory is that the transaction agreed upon on April 1 was not carried out and that when the corporation was dissolved two and one half months later for failure to file the reports with the Executive Secretary, it was completely insolvent. The debts exceeded the small assets available on that date. It was therefore a total loss.

The trial judge did not give credit to that evidence. And his determination in that sense is reasonable. Several stockholders met and received a report of the treasurer setting forth that the corporation had assets totalling $71,543.09. Two months later it is alleged that this same firm is completely insolvent. When the taxpayer was asked "to exhibit the accounting books which are there, containing the inventory, he answered 'We said that that does not appear on the books.'" And Radamés Vázquez, a public accountant who examined the corporation books on June 15, 1945, was asked:

"Q.—Regarding the furniture, automobiles, and inventory... please explain to the Court.

A.—They did not appear on the books.

Q.—Was there no inventory item?

A.—No.

Q.—Was there no furniture item?

A.—No.

Q.—Was there no automobile item?

A.—No. I had to ask the members of the corporation what items of assets they had at that time, and the information which I gathered was that there was a 1941 'Packard' which they valued on that date at $1,000. And a Dodge pick-up of more or less the same date which they valued at $200. That is the total for automobiles, $1,200.

Q.—What did they tell you about the inventory?

A.—About the inventory, they told me that there were 'dead' parts of very little value, which had scarcely any outlet. I asked them what kind of parts they were and that was all they told me, that they were 'dead' parts.

Q.—What about the furniture?

A.—Some old furniture which had been purchased many years ago, and I honestly believe that the value of $500 was inflated."

Hence, no inventory appears in the book and the stock book is not to be found. And the judge did not give credit to the oral evidence introduced to controvert what was formally set forth in the minutes of the meeting of April 1, 1945. The date of the dissolution of the corporation is not important. It is immaterial whether it actually took place by agreement of the stockholders of April 1, 1945, or *de officio* on the following June 15 for failure to render the reports required by law. *R. Colón Mach. & Mfg. Co.* v. *Sec. of the Treas.*, 78 P.R.R. 868–77 (1956). What was actually established, because of the credit which the judge gave to that evidence, was that on April 1 the corporation had assets of $71,543.09 and that it sold them to Roberto Colón for $68,164.62. That the sale of the total assets represented a loss of $14.79 per share, and that since the taxpayer owned 796 shares on the date of the transaction, he sustained a loss of $11,772.84 which was the loss which the trial court recognized to him. He was not entitled to anything else.

The judgment rendered by the Superior Court, San Juan Part, on December 5, 1952 will be affirmed.